[Civ. No. 7235. Second Appellate District, Division One.—February 2, 1933.]

CLARKE D. PEASE, Appellant, v. JOHN H. LINDSEY et al., Respondents.

Chandler, Wright & Ward and H. C. Mabry for Appellant.

Williams & Parks for Respondents.

CONREY, P. J.—The complaint of the plaintiff stated a cause of action for recovery of damages for breach of a contract in writing for the purchase by defendants from the plaintiff of six automobiles. The defendant John H. Lindsey, answering for himself alone, admitted the execution of the contract, but denied the allegation that they had "wrongfully failed, refused, and neglected to accept and pay for" four of the automobiles. Defendant Butler failed to answer. It should be noted, however, that the defendants were sued as copartners. The defendants as such copartners filed a cross-complaint, wherein they sought

to recover damages for breach of said contract by the plaintiff, and to recover moneys paid by defendants to the plaintiff in payment for certain automobile parts which it was alleged that the plaintiff wrongfully refused and failed to deliver.

The court by its findings determined that the contract was "too uncertain to entitle either the plaintiff or the defendants to maintain their respective actions for damages thereon", but found a balance due from the plaintiff in the sum of $7,614.73 with interest from August 13, 1927, moneys received by the plaintiff for said spare parts not delivered. Judgment was entered accordingly, and the plaintiff appeals therefrom.

The first stated ground of appeal is that the court erred in finding that the contract is too uncertain to entitle plaintiff to maintain his action thereon.

The contract purported to grant to respondents the exclusive right to sell Hispano-Suiza cars on the Pacific coast. It also set forth the terms of sale of six cars of that make, separately described by name and by price. It is recited in the contract that plaintiff is exclusive agent for the sale and distribution in the United States of America of Hispano-Suiza automobiles and parts thereof. After providing for the agency granted to defendants the contract says: "Fourth: The party of the first part hereby sells to the parties of the second part, and the parties of the second part hereby purchase or buy from the party of the first part six (6) Hispano-Suiza automobiles of the following types, upon the terms and conditions hereinafter set forth: One (1) Coupe De Ville, to be delivered F. O. B. New York, upon demand of the buyers at any time after the date hereof, at a price of $17,500., less 25%, to be paid upon the execution of this contract. In addition thereto, the buyers agree to pay all state and federal taxes, if any." Then follow in separate paragraphs similar descriptions by name and price of five other automobiles. It was provided "that the automobiles hereby described in this contract are to be imported by the seller from Europe". Provision was also made for the sale of certain miscellaneous parts for Hispano-Suiza automobiles.

Respondent in support of the court's finding of uncertainty in the terms of the contract points out that apart

from the price and from the name indicating the type "no other details are given, the contract being quite silent as to the model or year; the size or power; new or used; color or finish; catalog, engine or other number or means of identification, and other necessary matters. No method is set forth for the determination of such details".

Upon the law concerning this question, and particularly to the point that the contract is not uncertain, appellant cites: *McIllmoil* v. *Frawley Motor Co.,* 190 Cal. 546 [213 Pac. 971, 972]; *Mebius & Drescher Co.* v. *Mills,* 150 Cal. 229 [88 Pac. 917]; *Sutliff* v. *Seidenberg, Stiefel & Co.,* 132 Cal. 63 [64 Pac. 131, 469]; *Noble* v. *Reid-Avery Co.,* 89 Cal. App. 75 [264 Pac. 341]. In *McIllmoil* v. *Frawley Motor Co., supra,* the controversy related to a contract authorizing the sale by the defendant for the plaintiff of an old Mitchell automobile and the purchase by the plaintiff of a new Mitchell automobile. The written contract did not describe the new car except by the statement "I will buy a new Mitchell car." Pursuant to the contract the defendant sold the old automobile of the plaintiff, and received therefor the sum of $1,000. Plaintiff sued to recover this money on the ground that the agreement was void and unenforceable. The court found that the plaintiff failed and refused to agree upon a price for a new Mitchell car, and had failed and refused to agree on any terms or conditions on which the purchase price was to be paid by him for a new Mitchell car; that the prices of new Mitchell cars were all standard and fixed; that the selection of the car would determine the price to be paid; that there were several varieties of Mitchell cars, each variety having a different price.

In its consideration of the question thus raised on plaintiff's contention that the contract was void and unenforceable the Supreme Court declared that the law will, if feasible, so construe agreements as to carry into effect the reasonable intention of the parties if that can be ascertained; that the description of the subject matter of agreement may be indefinite, and yet if it is capable of being identified and rendered definite and certain by evidence *aliunde,* the contract is enforceable. "Applying this rule to the facts of this case, we think the contention of plaintiff that the contract is void for uncertainty cannot be sustained.

It is true that the written contract did not specify the particular model of new Mitchell car which the plaintiff was to purchase, nor the price to be paid therefor, nor the time of payment; but in law 'that is certain which may be made certain'. Here the plaintiff had agreed to purchase from the defendants a new Mitchell automobile. The particular car to be taken was not thereafter a subject of negotiations, all that remained to be done in this behalf being the selection by the plaintiff of one of the various models of Mitchell cars on sale by the defendants. Nor was the price to be paid therefor a subject of future agreement, since the prices of the various models, according to the agreed statement of facts, being fixed and standard, the selection by plaintiff of the car desired determined the price and made the contract definite in that respect also. As to the terms of payment, the written contract being silent upon this point, the law itself supplies the deficiency and requires that payment shall be made at time of delivery." The court further said: "As we have seen, the alleged uncertainty of the contract in the matter of the particular car to be taken and the price to be paid therefor disappears upon the performance by the plaintiff of an act which he under the contract was compelled to do, namely, select the particular car desired by him; . . . It is to be noted that the defendants are not here seeking specific enforcement of the contract or damages for its breach. They are not asking the court to decree a forfeiture, or adjudge a penalty or award damages; neither are they seeking to be relieved from the contract. They have performed their part, so far as they have been permitted to do so, and they stand ready to complete their performance whenever the plaintiff will enable them to do so." The court laid stress upon the fact that the prices of the new Mitchell cars were standard and fixed. Under these circumstances the court held that there was a valid contract, and that the judgment in favor of defendant should be affirmed.

It is suggested by respondents that the decisions cited by appellant "do no more than to hold that an uncertain contract will nevertheless be enforced if the reasonable intentions of the parties can be ascertained". The trial court seems to have determined that the intentions of the parties with respect to the identification of the automobiles named

in the contract could not be ascertained. Respondents point to the testimony of the plaintiff Pease, that "there is a 20 model, a 32 model and a 46 model Hispano-Suiza automobile; we have no 'standard' car". But Mr. Pease also testified, in substance, that all of the cars referred to in the contract were "32 model"; for example, that a $16,800 Torpedo Hispano-Suiza car represents a standard type of touring car, five passenger, two extra seats facing forward, and the rear tonneau with a cloth top and side curtains. "I know of no other description to cover these cars by which they could be more certainly specified than the description contained in the contract. The description and the price determine the exact model. I know of no way of describing the cars more accurately." Defendants did not contradict plaintiff as to this matter of certainty in the contract terms. Mr. Lindsey said: "With reference to car No. 3 covered by the contract, I had data showing the particular car there described." He conceded that every car they had ordered prior to 1928 was "a 32 car model". (This contract was made in the year 1927.) The testimony of this defendant shows, not that the contract was uncertain, but that he claimed that some of the cars which the plaintiff wanted him to accept did not comply with the contract description. Both of these parties agreed, in effect, that the descriptions were sufficient. But in addition, Mr. Lindsey said that he knew specifically the cars that were covered by the contract. If there was any conflict in the testimony of these witnesses concerning the true description of the cars sold, it was a contradiction which, however solved, did not leave the contract uncertain. We are of the opinion, therefore, that the court erred in deciding that the contract was too uncertain to entitle either party to maintain an action for damages thereon.

The judgment is reversed.

Houser, J., and York, J., concurred.